**UNITED STATES of America,**

v.

**Jose Alberto POLANCO, Defendant.**

**No. 93 Cr. 389 (WK).**

United States District Court,
S.D. New York.

Sept. 9, 1994.

Maria A. Barton, Kenneth Karas, Asst. U.S. Attys., S.D.N.Y., New York City, for U.S.

Heriberto A. Carrera, New York City, for defendant.

### AMENDED MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

The circumstances relevant to the sentence imposed upon defendant Polanco—which has been vacated by a panel of the Court of Appeals—are set forth in its opinion, familiarity with which is assumed. *See United States v. Polanco,* 29 F.3d 35 (2d Cir.1994) (hereinafter *"Polanco I"*).

In fixing the sentence, we recognized the existence of a New York Supreme Court practice which had arisen to deal with the huge numbers of "minnows"[1] who are regularly brought before it charged with violating N.Y. Penal Code § 220.34, a Class C Felony punishable by up to 15 years. The glut of such cases was threatening to make it impossible to complete any prosecutions within the strictures of defendants' speedy trial rights. The practice which arose to avoid such threatened result was (and continues to be) to let it be generally understood that any "minnow" who pleads guilty to such a felony will be treated at sentence as the minor offender he actually is. We found as a fact that the Sentencing Commission was unaware of this local practice. We further found that, had it been so aware, the Commission would have revised Guideline 2L1.2 to prevent the automatic characterization as "aggravated felonies" of convictions resulting from pleas entered in reliance on this practice. We therefore ruled that there existed circumstances of a kind "not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." (See Joint Appendix at 37). The panel never mentioned this ruling, or the findings of fact upon which it was based (see *Polanco I passim* ).

At the time we made this ruling, we were under the impression that Second Circuit law required us to assume that the Guidelines as written were absolutely inflexible no matter how absurdly unjust the result in a given case might be; and that—unless we could make the above-mentioned findings—we were powerless to protect the defendant from such injustice. *Cf.* the present Chief Judge dissenting from the denial of an application for a hearing *en banc* in *U.S. v. Concepcion* (2d Cir.1992) 983 F.2d 369, 395, *cert. denied sub nom* (1993) *Frias v. United States,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124. Apparently the panel considering our prior sentence was under the same impression. During oral argument, in commenting upon the uncontested fact that the Guidelines' proposed sentence would simply destroy Polanco, one member of the panel observed:

> The sentencing commission certainly was aware that incarceration for five years may have been the ultimate origin of any found in his possession. In other words, a minnow is without bargaining power to persuade a prosecutor either to refrain from indicting him or to allow him to dispose of an indictment by a misdemeanor plea.

---

1. Webster's Third New International Dictionary gives as its 3rd definition of the word minnow: "A small or insignificant person or thing". It is used in this opinion to describe any drug arrestee whose total involvement with drugs is so insignificant that he is wholly without information about how in general they are marketed, or what may

be destructive. Nevertheless, they went ahead and promulgated the guidelines that they did, and it's their policy that we have to implement.[2]

Since the oral argument, an opinion by Chief Judge Newman, concurred in by Judges Pierce and Leval, referring back to an earlier *per curiam* opinion concurred in by the Chief Judge and Judges Van Graafeiland and Pratt, made it clear that—at least in the view of those judges—there might be situations which would "make the Guideline grossly unfair in application, meriting at least a downward departure and perhaps raising a constitutional issue." *United States v. Ivonye* (2nd Cir.1994) 30 F.3d 275, 276, quoting *United States v. Imariagbe* (2nd Cir.1993) 999 F.2d 706, 708.

The case before us presents precisely such a situation. Accordingly, we need not revisit our factual determination that the Commission would have altered the pertinent Guideline had it been aware of the above-described New York method of judicial management of minor drug cases.

We turn, then, to the specific facts before us. We have a defendant who—as revealed by the New York Supreme Court probation report—might well have had an arguable defense of entrapment,[3] and pleaded guilty in reliance upon the New York practice already described. It is hard to think of anything more "grossly unfair" than the Government's present attempt to cause this defendant's above described state plea automatically to result in increasing his federal sentence from ten months to roughly five years. It is therefore unnecessary to rule upon whether or not a "constitutional issue" is raised.

As an alternative basis for a decision, however, that constitutional possibility should be considered. Critical is Application Note 7, which applies to Guideline 2L1.2. It provides: " 'Aggravated felony' as used in subsection (b)(2) means *murder; any* illicit trafficking in *any* controlled substance ... whether in violation of federal or state law ..."

■■■ The Commission concededly has the broadest discretion in carrying out its functions. Nonetheless, in order for its actions to be constitutional they must comport with the basic purposes set forth in the statute of its creation. That statute makes clear that the Commission's primary function is the formulation of sentences which would give similar treatment to persons similarly situated. Thus, 28 U.S.C. § 991(b) provides (emphasis supplied):

(b) The purposes of the United States Sentencing Commission are to—

(1) establish sentencing policies and practices for the Federal criminal justice system that—

---

**2.** This quotation is from page 12 of the transcript of oral argument prepared by Parsley Associates, Inc.

**3.** The New York probation report reveals that Polanco was at the time of his arrest a documented alien who had lived in New York City since 1979 (nine years). He had never been arrested and seems to have been constantly employed. Accordingly, although his attorney advised us that he had had a "drug problem" the facts suggest that he had been able to deal with any such "problem" and support his family with his legitimately earned income; and that, but for the intervention of his friend who turned out to be an informer, he would not have been "disposed to commit" the crime to which he pleaded. *See* New York Penal Law § 40.05.

The Government's argument against this proposition borders on the absurd. In commenting on Polanco's statement to his state probation officer that he had been "manipulated" by his friends, the Government asserts (at page 8 of its brief): "At no time did Polanco suggest that the friends who had 'manipulated' him were government agents ..." The Government does not suggest how this citizen of the Dominican Republic who, insofar as United States law is concerned never seems to have had to contend with so much as a traffic ticket, could have known that the friend who betrayed him would, in the parlance of entrapment jurisprudence, have been designated as a "government agent." In other words, although it can not be denied that the informer was in fact a "government agent," Polanco is criticized for not having so identified him in his conversation with the probation officer.

(A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code,

(B) provide *certainty* and *fairness* in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with *similar records* who have been found guilty of similar criminal conduct ...

Section 3553, to which the quoted provision refers, in defining the "[f]actors to be considered in imposing a sentence," provides among other things that there shall be considered (emphasis supplied):

(6) the need to avoid unwarranted sentence disparities among defendants with *similar records* who have been found guilty of similar conduct.

Thus the constitutional questions here presented are: (1) Can a first-time offender (such as Polanco) who has been convicted of selling five grams of cocaine to a police officer be said to have a *record* which is *similar* to the *record* of a drug lord who has been convicted of murdering such an officer? and (2) While specifying similar treatment for all defendants regardless of their records might well provide *certainty,* can it be said to provide *fairness* in meeting the purposes of sentencing? Both questions answer themselves.

The plain words of the statute preclude the result the Government urges upon us. We need not speculate about the Due Process and Equal Protection questions that would arise should the statute be misconstrued so as to permit a Guideline to compel judges to give comparable treatment to minnows like Polanco and persons who had been convicted of murder.

## CONCLUSION

A suitable downward departure should be based upon the Guideline which the Probation Department suggested as appropriate, but as qualified by application note 3, which would produce a sentence of not more than 10 months. Polanco has already served six-teen months. Accordingly, we shall sentence him to time served plus an assessment of $50.00, with the provision that, should he fail to pay that assessment, such failure would in no way inhibit the INS from carrying out its decision to return him to the Dominican Republic.

SO ORDERED.